UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| KAREN AUDAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:10-CV-260 |
| v. | ) | |
| | ) | Collier/Lee |
| THE WET SEAL RETAIL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**M E M O R A N D U M**

Before the Court is Defendant The Wet Seal Retail, Inc.'s ("Defendant") motion for judgment on the pleadings, filed pursuant to Fed. R. Civ. P. 12(c) (Court File No. 7). Plaintiff Karen Auday ("Plaintiff") responded (Court File No. 16), and Defendant replied (Court File No. 24). Because the Court is constrained to follow clear circuit precedent, the Court will **GRANT** Defendant's motion for judgment on the pleadings (Court File No. 7).

**I.      FACTS**

On December 8, 2008, Plaintiff became employed by Defendant, a national retail clothing chain, at one of its stores in Chattanooga, Tennessee. According to the complaint, shortly after Plaintiff was hired, Defendant's District Director Kristi Summers "expressed displeasure about Plaintiff's age and her attire in a store for young people" (Court File No. 1-1, ¶ 8). "On many occasions over the next several months" similar disparaging remarks were made about Plaintiff's age, including comments "that she should be looking for a job 'more age appropriate'" (*id*. at ¶¶ 9, 11). Plaintiff further claims that during her time of employment, Defendant hired other women in their late teens and early 20's as assistant managers, paying them more than Plaintiff (*id*. at ¶ 10).

On September 17, 2009, Plaintiff was terminated (*id.* at ¶ 12).

On September 21, 2009, Plaintiff wrote a letter to Defendant's corporate office, which stated in pertinent part:

> On Sept. 17, 2009, I was wrongfully terminated from my position of Assistant Manager of Store #884 in Chattanooga, Tennessee. . . .
>
> I believe this termination was pre-meditated and deliberate, and nothing more than the culmination of 10 months of constant harassment, discrimination, and unlawful labor practices perpetrated upon me by Ms. Summers.
>
> I am consulting an Attorney, and I will not rest until this matter is resolved in a lawful and equitable manner.

(Court File No. 6-1). That same day, Plaintiff sent Ms. Summers an e-mail stating "[s]everal employees are being told that I was 'let go' ('meaning... 'fired') [sic] that are willing to verify this, as your harassment towards me continues even after I am gone" (Court File No. 6-2, p. 3). Additionally, Plaintiff sent an e-mail to Defendant's Human Resources Director, Tricia Sprowell, which said "[a]side from ongoing harassment, falsification of records and discrimination by the District Director, I believe numerous other violations of State and/or Federal Laws may have occurred on a regular basis during my ten months of employment . . . . I have consulted Legal Counsel with regards to these matters" (*Id.* at p. 2).

Also on September 21, 2009, the same day as Plaintiff made the above communications, Plaintiff and her husband filed a Chapter 7 bankruptcy petition. The petition listed $204,370.00 in assets and $510,725.63 in liabilities. (Docket No. 1, 1:09-BK-16044, p. 18). Plaintiff did not disclose her potential discrimination claims against Defendant on the bankruptcy petition, but in fact marked "None" by the entry "Other contingent and unliquidated claims of every nature . . . ." (*Id.* at p. 22). Neither did Plaintiff disclose to the bankruptcy court that she had been terminated four

days earlier. In fact, on the "Schedule I - Current Income of Individual Debtor(s)" form, Plaintiff represented that she was employed by Wet Seal, with a monthly income of $1,684.15. (*Id*. at p. 40). Plaintiff signed the petition under penalty of perjury. (*Id*. at p. 47).

Throughout the course of the bankruptcy proceedings, Plaintiff never amended the petition to reflect her termination by Defendant, or her possession of employment discrimination claims against it. Two months after filing for bankruptcy Plaintiff did amend her petition, however this amendment only altered the unsecured creditors list; it did not disclose her change in employment status or claim against Defendant. (Docket No. 19, 1:09-BK-16044).

Contemporaneously with the filing of Plaintiff's bankruptcy petition, a "Notice of Chapter 7 Bankruptcy Case" was sent to Plaintiff's creditors. (Docket No. 9, 1:09-BK-16044). The notice instructed creditors not to file proof of claim, as "[t]here does not appear to be any property available to the trustee to pay creditors." (*Id*. at p. 2). The notice set a deadline of December 22, 2009 for creditors to object to the discharge of Plaintiff's debts. (*Id*. at p. 1).

On January 5, 2010, Judge Cook entered an order discharging Plaintiff and her husband. (Docket No. 21, 1:09-BK-16044). One month after the discharge, on February 8, 2010, the trustee of Plaintiff's bankruptcy estate applied to the bankruptcy court to employ Plaintiff's present counsel as "special counsel" to pursue the employment discrimination claim. (Docket No. 23, 1:09-BK-16044). The bankruptcy court granted this application on March 5, 2010. (Docket No. 25, 1:09-BK-16044). On March 8, 2010, Plaintiff filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC"), raising the discrimination claims she now brings against Defendant.

On September 15, 2010, Plaintiff's complaint against Defendant was removed to this Court.

In her complaint, Plaintiff alleges age discrimination and harassment, in violation of Tenn. Code Ann. § 4-21-101, *et seq*. She seeks, *inter alia*, $500,000 in monetary relief (Court File No. 1-1, p. 4).

Defendant has moved for judgment on the pleadings, advancing three independent theories: 1) Plaintiff is "judicially estopped" from bringing the present claim because she failed to disclose it to the bankruptcy court; 2) Plaintiff lacks standing because her claim against Defendant is part of the bankruptcy estate; and 3) Plaintiff is bound by an arbitration agreement to arbitrate her claim rather than litigate it. Plaintiff, for her part, argues judicial estoppel is improper because allowing this claim to proceed is in the best interests of her estate and creditors, and her failure to disclose the claim to the bankruptcy court was innocent, inadvertent, and harmless. Plaintiff also argues she has standing to pursue the present claim because the bankruptcy trustee has given her permission to proceed on his behalf. Finally, Plaintiff argues the arbitration agreement should not be enforced against her because it is procedurally and substantively unconscionable.

## II.    STANDARD OF REVIEW

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is considered using the same standard of review as a Rule 12(b)(6) motion. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Under this standard, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id.* (citing *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *JP Morgan Chase Bank*, 510 F.3d at 581-82. "Pleadings" include,

*inter alia*, the complaint and answer. Fed. R. Civ. P. 7(a)(1)-(2). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Because "documents attached to the pleadings become part of the pleadings[, they] may be considered on a motion to dismiss . . . without converting a motion to dismiss into one for summary judgment." *Commer. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007).

## III.    ANALYSIS

Upon consideration of the pleadings and briefs, and binding authority of the United States Court of Appeals for the Sixth Circuit, the Court concludes Plaintiff's claim is barred by judicial estoppel, thus dismissal is proper. Because this issue is clear, the Court does reach Defendant's alternative arguments regarding standing and the arbitration agreement.

"The doctrine of judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) (quotation omitted). The doctrine is designed to "preserve 'the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Id.* (quoting *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002)). In the bankruptcy context, judicial estoppel "bars a party from (1) asserting a position [in a civil suit] that is contrary to one that the party has asserted under oath in a prior [bankruptcy] proceeding, where (2) the [bankruptcy] court adopted the contrary position 'either as a matter or as part of a final disposition.'" *White*, 617 F.3d at 476 (quoting *Browning*, 283 F.3d at 775-76)). Thus, for example, in *White*, the Sixth Circuit affirmed the district court's application of judicial estoppel to bar the appellant's harassment claim against her employer, since the appellant did

not mention her harassment claim in her bankruptcy petition. Despite a litigant's advancement of a contradictory argument, however, judicial estoppel is inappropriate where this conduct is due simply to mistake or inadvertence. *White*, 617 F.3d at 476.

Here, Plaintiff undisputedly failed to include her potential claim against Defendant at the time she completed her bankruptcy petition under oath, despite being under an affirmative duty to disclose all assets under 11 U.S.C. § 521. "It is well-settled that a cause of action is an asset that must be scheduled under § 521(1). Moreover, the duty of disclosure is a continuing one, and a debtor is required to disclose all potential causes of action." *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005) (quotation and citation omitted); *see Eubanks v. CBSK Fin. Grp., Inc.*, 385 F.3d 894, 897 (6th Cir. 2004). Although obviously aware of her ability to amend the petition (given that she amended it once to change the creditor list), Plaintiff neglected her "continuing duty" to amend the petition by adding her potential cause of action. By failing to disclose the claim in her bankruptcy petition, but bringing it now, Plaintiff is "asserting a position that is contrary to the one she asserted under oath in a prior proceeding." *See White*, 617 F.3d at 476.

It is also undisputed the bankruptcy court adopted the prior position as part of a final disposition when it entered the order discharging Plaintiff. *See id.* at 479 ("[O]n August 12, 2008, the bankruptcy court entered an order requiring White to make payments to the trustee . . . . At this point, the bankruptcy court adopted her position . . . ."); *see also Reynolds v. Comm'r,* 861 F.2d 469, 473 (6th Cir. 1988) ("when a bankruptcy court – which must protect the interests of all creditors – approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient 'judicial acceptance' to estop the party from later advancing an inconsistent position"); *Tangwell v. Looby*, 109 F. App'x 12, 15 (6th Cir. 2004) ("In bankruptcy

litigation, the requisite court approval of a settlement constitutes sufficient 'judicial acceptance' to prevent a party from later advancing an inconsistent position"). Thus, Defendant has established Plaintiff's assertion of a contrary position and the bankruptcy court's adoption of the prior position. Accordingly, this case appears to at least be a candidate for the application of judicial estoppel.

The Court's inquiry does not end here, however. Judicial estoppel is not applicable in "cases of conduct amounting to nothing more than mistake or inadvertence." *White*, 617 F.3d at 476 (quotation omitted). In determining whether a debtor's omission of a claim resulted from mistake or inadvertence, the "court considers whether: (1) [the debtor] lacked knowledge of the factual basis of the undisclosed claims; (2) [the debtor] had a motive for concealment; and (3) the evidence indicates an absence of bad faith." *Id*. at 478. When determining whether there was an absence of bad faith, the court "will look, in particular, at [the debtor's] 'attempts' to advise the bankruptcy court of her omitted claim." *Id*. "Since the bankruptcy system depends on accurate and timely disclosures, the extent of these efforts, together with their effectiveness, is important." *Id*. at 480.

Plaintiff argues the omission of her claim from the bankruptcy petition was inadvertent and done without motive to conceal. According to Plaintiff's brief, she obtained bankruptcy counsel (who is not the counsel in the present litigation) while still employed by Defendant. On September 14, 2009 – three days before she was terminated from her job – Plaintiff and her husband completed the necessary paperwork to file for bankruptcy. On September 21, 2009 – four days after being fired – Plaintiff signed the previously-prepared paperwork, and did not think to tell her bankruptcy counsel about her recent termination, or her possible claims against Defendant. Four days later, on September 25, 2009, Plaintiff contacted her present counsel to discuss the possibility of bringing a discrimination claim against Defendant. Throughout October and November 2009, Plaintiff met with this counsel

7

but never mentioned the fact she was in the midst of bankruptcy proceedings. During this period her counsel conducted research to determine whether or not to take the case. In December 2009, Plaintiff's counsel informed her they would take her case, and produced a fee contract. It was at this point Plaintiff finally revealed she was in bankruptcy proceedings, and would need to get permission from the bankruptcy trustee to make any financial obligation with counsel.

On December 17, 2009, Plaintiff's counsel sent a letter to the bankruptcy trustee, apprising him of Plaintiff's discrimination claim and seeking to be appointed special counsel for that claim.[1] However, there is no indication, and Plaintiff does not claim, that Plaintiff ever told the *court* about the omitted discrimination claim. Nor is there any indication, and Plaintiff does not claim, that Plaintiff told the trustee specific details about the discrimination claim, such as when it arose, whether Plaintiff was aware of the factual basis of the claim before filing for bankruptcy, and what sorts and amounts of damages would be sought. Three weeks after the trustee became aware of Plaintiff's discrimination claim, the bankruptcy court granted Plaintiff's discharge. Again, there is no indication the court was aware Plaintiff had omitted the discrimination claim from her bankruptcy petition at the time it granted the discharge. It was not until one month later, on February 8, 2010, that the trustee filed an application with the bankruptcy court to have Plaintiff's present counsel employed as special counsel for the discrimination claim. On March 5, 2010, the bankruptcy court granted the application.

According to Plaintiff, her creditors are now aware of her discrimination claim, and they are free to assert new or modified claims against the bankruptcy estate. Furthermore, Plaintiff maintains

_____

[1]This letter, along with several "Declarations," are attached to Plaintiff's response brief. However, inasmuch as they are not part of the pleadings, the Court is not considering them as evidence.

she never intended to conceal her discrimination claim from the bankruptcy court, she had no motive to conceal the claim, and she did her best to notify the bankruptcy court once her counsel realized the significance of the omission. Plaintiff also argues her December 17, 2009 letter to the bankruptcy trustee and the ensuing application to employ counsel effectively remedied the omission of her claim from the bankruptcy petition. Thus, asserts Plaintiff, the equitable justifications for judicial estoppel would not be satisfied were the doctrine applied here.

The Court cannot agree with Plaintiff. Under binding Sixth Circuit precedent – most notably *White* – Plaintiff's omission of her claim from the bankruptcy petition was not the result of excusable mistake or inadvertence. First, it is clear Plaintiff had knowledge of the factual basis of the undisclosed claim. As her communications to Defendant on September 21, 2009 reveal, she was fully aware of Defendant's allegedly-wrongful conduct towards her – conduct which stretched back almost ten months.[2] Second, it cannot be said Plaintiff had no motive for concealment. By filing for bankruptcy, Plaintiff sought and obtained judicial protection from her creditors. Were the bankruptcy court aware of the "asset" of Plaintiff's claim against Defendant – a claim Plaintiff values at upwards of $500,000 – it is conceivable the court would not have granted the discharge. Shielding her claim from the bankruptcy court's attention mitigated this risk. Thus, Plaintiff, like most debtors in bankruptcy, had a motive to minimize her assets. *Cf. Lewis*, 141 F. App'x at 426 ("it is always in a Chapter 13 petitioner's interest to minimize income and assets").

Third, the evidence does not indicate an absence of bad faith. As the Sixth Circuit explained in *White*, a debtor's attempts to advise the bankruptcy court of her omitted claim are highly probative

---

[2]Not only was Plaintiff aware of the factual basis of the claim, her references to consulting an attorney indicate she suspected Defendant's conduct was legally actionable.

of her bad faith or lack thereof. *See White*, 617 F.3d at 478. Here, Plaintiff made virtually no attempts to advise the bankruptcy court of her omitted claim. Despite the contemporaneity of Plaintiff's contemplation of commencing litigation against Defendant and her filing for bankruptcy, she apparently never told her bankruptcy counsel about her claim against Defendant. Even after learning from her present counsel of the relevance of the bankruptcy case to the present action, there is no indication Plaintiff went back and told her bankruptcy counsel about her claim against Defendant.

In fact, the only evidence Plaintiff can point to as an attempt to advise the bankruptcy court about her omitted claim is her present counsel's December 17, 2009 letter to the trustee, which prompted the trustee to file an application to employ counsel for the discrimination suit. However, as the Sixth Circuit 's holding in *White* indicates, such effort is inadequate to remedy the omission of a potential claim from a bankruptcy petition. In *White*, the plaintiff failed to disclose claims against her employer in her initial bankruptcy filings. *Id*. at 474. However, the day after the bankruptcy court held a "Plan Confirmation Meeting," Plaintiff filed a lawsuit against the defendants, seeking $250,000 in compensatory damages and $1 million in punitive damages. *Id*. at 475. The following day, Plaintiff filed an "Application to Employ Counsel" with the bankruptcy court, seeking approval for her employment counsel to litigate the claim against her employer. *Id*. The Application "did not identify whether she was the plaintiff or the defendant in the claim . . ., when the claim would be filed, the underlying facts giving rise to the claim, or the amount of the claim." *Id*. The defendants filed a motion to dismiss on grounds of judicial estoppel, and in response the plaintiff amended her bankruptcy petition's "Statement of Financial Affairs" to reflect her claim. *Id*. Nonetheless, the district court dismissed plaintiff's claim on judicial estoppel grounds, and the Sixth

Circuit affirmed.

In affirming the dismissal, the Sixth Circuit characterized the plaintiff's efforts as "limited and ineffective attempts to correct her initial misfiling." *Id*. at 480. With respect to the application to employ counsel, the court recognized it constituted "some notice" to the bankruptcy court, but determined such notice was insufficient:

> [H]er application did not identify whether she was the plaintiff or the defendant in the lawsuit (although the fact that her lawyer was representing her on a contingency fee suggests that she was the plaintiff), the amount of the lawsuit, the facts giving rise to the lawsuit, or even when the actions giving rise to the lawsuit took place. It also did not indicate that the harassment claim had been omitted from her initial filings and it did not appear to trigger any request for additional information from the bankruptcy court or the trustee. Furthermore, it did not cause White to update her inaccurate filing statement. Consequently, the application did not adequately inform the court, the trustee, or White's creditors of the initial omission and it does not show an absence of bad faith or that White's omission resulted from mistake or inadvertence.

*Id*. at 481.

The facts in the present case are quite similar to those in *White*, and what differences there are do not redound to Plaintiff's benefit. Like the plaintiff in *White*, Plaintiff failed to disclose her claim in her initial bankruptcy filing. Also like the plaintiff in *White*, Plaintiff eventually filed with the bankruptcy court an application to employ counsel for the discrimination claim, which in Plaintiff's case apparently came about as a result of the letter her counsel sent the trustee. This application, like that in *White*, did not apprise the bankruptcy court of the amount of the lawsuit; it did not state the facts giving rise to the lawsuit; it did not disclose when the actions giving rise to the lawsuit took place; and it did not even mention that the claim had been omitted from Plaintiff's initial filings (*See* Docket No. 23, 1:09-BK-16044). In fact, the application is so unspecific, one might read it and assume Plaintiff's claim had arisen well after she filed for bankruptcy. It is therefore unsurprising that, as in *White*, the application did not appear to trigger any request for additional

11

information from the bankruptcy court. Also like *White*, the filing of Plaintiff's application did not

prompt her to update her inaccurate filing statement. However, Plaintiff's application does differ

from that in *White* in one significant respect: unlike the application in *White*, Plaintiff's application

was filed after she received a complete Chapter 7 discharge of her debts.[3] In other words, Plaintiff's

creditors received no official notice of her claim against Defendant until well after her debts were

expunged.

Plaintiff's efforts to correct her initial misfiling – if so they can be called given the fact

Plaintiff never actually *corrected* the initial misfiling – stand in stark contrast to efforts the court has

deemed sufficient to avoid judicial estoppel. For example, in *Eubanks*, the Sixth Circuit held judicial

estoppel was inappropriate. However, unlike Plaintiff in this case, the *Eubanks* plaintiffs had taken

multiple affirmative steps to correct their initial misfiling, including:

> (1) notifying the bankruptcy trustee of the claim during a meeting of the creditors one
> month after the petition was filed; (2) asking the trustee on multiple occasions over
> several months whether he intended to pursue the claim on behalf of the estate; (3)
> requesting the bankruptcy court to hold a status conference on the issue of the claim;
> (4) unsuccessfully moving to allow the trustee to be substituted for themselves in the
> action after the action was filed and after the trustee refused to abandon the claim in
> the bankruptcy proceeding; and (5) filing an amendment to their original bankruptcy
> petition to add the claim to their bankruptcy schedules after the defendant filed a
> motion to dismiss on the basis of judicial estoppel.

*Coffelt v. Am. Frozen Foods, Inc.*, No. 1:10-CV-69, 2010 WL 4238005, *5 (E.D. Tenn. Oct. 21,

2010) (citing *Eubanks*, 385 F.3d at 895-98). Plaintiff's efforts fall far short of those exhibited by the

Plaintiff in *Eubanks*. The Court concludes Plaintiff's efforts, like those in *White*, were "limited and

ineffective." *See White*, 617 F.3d at 480. As in *White*, they did not adequately inform the court or

---

[3]Although Plaintiff's counsel apparently told the trustee of Plaintiff's claim before the
discharge, there is no evidence this information was shared with the bankruptcy court prior to
discharge.

Plaintiff's creditors of the initial omission of Plaintiff's claim. Thus, they do not show an absence of bad faith or that Plaintiff's omission resulted from mistake or inadvertence.

The Court finds Plaintiff failed to disclose her pending claim against Defendant to the bankruptcy court and thereafter made no meaningful attempt to amend her bankruptcy filings or apprise the bankruptcy court of the omission. The bankruptcy court adopted Plaintiff's contrary position when it entered an order discharging Plaintiff's debts. The evidence does not show Plaintiff's omission was the result of excusable mistake or inadvertence. Accordingly, the doctrine of judicial estoppel applies to Plaintiff's claims and she is therefore barred from pursuing the instant action.

## IV.     CONCLUSION

For the reasons discussed above, the Court will **GRANT** Defendant's motion for judgment on the pleadings (Court File No. 7).

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**