UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| KAREN AUDAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:10-CV-260 |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| WETSEAL RETAIL, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This employment discrimination matter was vacated and remanded by the United States
Court of Appeals for the Sixth Circuit because the Court dismissed the case under the doctrine of
judicial estoppel without first determining whether Plaintiff Karen Auday ("Plaintiff" or "Ms.
Auday") had standing to pursue her claim that was property of her Chapter 7 bankruptcy estate. *See
Auday v. Wet Seal Retail, Inc.*, 698 F.3d 902 (6th Cir. 2012). After the mandate was issued, the
Court held a status conference with counsel for the parties and the Chapter 7 Trustee on December
14, 2012. The Court ordered the parties to brief the following issues: (1) standing; (2) the scope of
the Sixth Circuit's decision; (3) any statute of limitations concerns; and (4) whether a potential or
actual conflict of interest exists if the Trustee becomes a party and is represented by Ms. Auday's
counsel.[1]

On May 15, 2013, the Court held a hearing at which counsel for Ms. Auday, counsel for
Defendant, and the Chapter 7 Trustee Jerrold D. Farinash argued their positions on the issues above.

---

[1] The Court also ordered and the parties briefed whether the case was subject to arbitration.
In light of the parties' averments in their filings as well as the present posture of the case, the Court
concludes it is not necessary to explore the issue of arbitration at this time.

Counsel for the parties and the Trustee did an exceptional job advocating for their respective positions and responding to the Court's questions. After considering the pre- and post-hearing briefs filed by counsel, the oral arguments of counsel and the Trustee, the relevant case law, and the guidance provided by the Sixth Circuit with respect to this case, the Court will **ORDER** that the Chapter 7 Trustee be substituted as the real party in interest in the case. The Chapter 7 Trustee, however, may not be represented by Ms. Auday's counsel due to the fact such concurrent representation may lead to a potential or actual conflict of interest. Finally, the Court will **DENY** Ms. Auday's motion to amend the complaint (Court File No. 53) given that she is no longer a party in the case. The Court will, however, grant leave to the Trustee to file an amended complaint in the event he desires to assert the ADEA claim raised in Ms. Auday's amended complaint.

## I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Because the Court has provided a detailed statement of the facts in previous memoranda, the Court will not repeat all of those facts here. Below is a brief summary of the facts relevant to the instant proceeding. Ms. Auday began working for Defendant The Wet Seal Retail, Inc., a national retail clothing chain, on December 8, 2008 at one of their stores in Chattanooga, Tennessee. Ms. Auday alleges she was discriminated against and harassed on the basis of age. She also claims she was wrongfully terminated on September 17, 2009.

On September 21, 2009, Ms. Auday and her husband filed a Chapter 7 bankruptcy petition listing $204,370.00 in assets and $510,725.63 in liabilities. She did not disclose that she had potential discrimination claims against Defendant. In fact, on the bankruptcy petition, she marked "None" by the entry "Other contingent and unliquidated claims of every nature." Ms. Auday also

2

failed to amend her petition and associated schedules during the course of the bankruptcy proceeding to reflect that she had been terminated and possessed potential employment discrimination claims.

On January 5, 2010, Judge Cook entered an order discharging Ms. Auday and her husband. One month after the discharge, on February 8, 2010, the trustee of Ms. Auday's bankruptcy estate applied to the bankruptcy court to employ Ms. Auday's present counsel as "special counsel" to pursue the employment discrimination claims. This application was granted on March 5, 2010.

On September 15, 2010, Ms. Auday's complaint against Defendant was removed to this Court. In her complaint, Ms. Auday alleges age discrimination and harassment, in violation of the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. §§ 4-21-101, *et seq.* She seeks, *inter alia*, $500,000 in monetary relief as well as injunctive relief in the form of reinstatement or "front pay and benefits in lieu of reinstatement." Less than a month later, Defendant filed a motion for judgment on the pleadings seeking dismissal of the case.

On March 22, 2011, the Court granted Defendant's motion for judgment on the pleadings based on the doctrine of judicial estoppel and the case was dismissed. The Court determined it was not necessary to decide the issue of standing because Ms. Auday was judicially estopped from bringing her claims. Ms. Auday subsequently filed a "Motion for Relief from Judgment and/or to Alter or Amend Judgment," which the Court also denied. Ms. Auday appealed the matter and the Sixth Circuit vacated and remanded the case back to this Court in *Auday v. Wet Seal Retail, Inc.*, 698 F.3d 902 (6th Cir. 2012).

The Court held a status conference with counsel for the parties and the Chapter 7 Trustee on December 14, 2012, at which time the Court ordered the parties to brief issues relevant to the remand. The Court held oral argument on these matters on May 15, 2013.

## II.     DISCUSSION

The following issues are now before this Court. First, the Court must determine who is the real party in interest pursuant to Fed. R. Civ. P. 17(a) with respect to Ms. Auday's employment discrimination claims. As noted by the Sixth Circuit, that party appears to be the Chapter 7 Trustee. Second, even if the Trustee is the real party in interest, the parties dispute whether he can be joined as a party or whether he must be substituted. A brief discussion of the scope of the Sixth Circuit's decision will address this matter. Third, even if the Trustee can be properly joined or substituted, the Court must determine whether Ms. Auday's THRA claims are time-barred. Finally, assuming the claims are not time-barred, the Court must determine whether the Trustee's representation by Ms. Auday's counsel, Burnette, Dobson & Pinchak, creates a potential or actual conflict of interest. Each of these issues will be addressed in turn.

### A.     Real Party in Interest

First, the Court must determine whether Ms. Auday has "standing" to pursue her employment discrimination claims, which accrued prior to the filing of her Chapter 7 bankruptcy petition. More precisely, the Court must determine whether Ms. Auday can bring her claims as the real party in interest pursuant to Rule 17(a) of the Federal Rules of Civil Procedure. *See Auday v. Wet Seal Retail, Inc.*, 698 F.3d 902, 904 (6th Cir. 2012) (citing Rule 17(a) and stating the threshold question is whether Auday "is capable of bringing this lawsuit"); *Kimberlin v. Dollar Gen. Corp.*, 12-3584, 2013 WL 1136563, at *2 (6th Cir. Mar. 20, 2013) (citing the Sixth Circuit's *Auday* decision and noting the "standing problem" raised by the parties--that is, "whether a debtor or only a bankruptcy trustee has the right to prosecute legal claims related to the bankruptcy estate—is better characterized as a real-party-in-interest question governed by Rule 17"). Rule 17(a) provides "[a]n

4

action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a).

As explained in the United States Bankruptcy Code, the "bankruptcy estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *Bauer v. Commerce Union Bank*, 859 F.2d 438, 440-41 (6th Cir. 1988) (citing 11 U.S.C. § 541(a)(1)); *In re Van Dresser Corp.*, 128 F.3d 945, 947 (6th Cir. 1997). Moreover, "it is well established that the 'interests of the debtor in property' include 'causes of action.'" *Bauer*, 859 F.2d at 441 (quoting *Gochenour v. Cleveland Terminals Bldg. Co.*, 118 F.2d 89, 93 (6th Cir. 1941) and *In re Ozark Restaurant Equipment Co.*, 816 F.2d 1222, 1225 (8th Cir. 1987)). The trustee in bankruptcy "acts as representative of the estate" and "has the capacity to sue and be sued." *Id.* (citations omitted). Therefore, "the right to pursue causes of action formerly belonging to the debtor--a form of property 'under the Bankruptcy Code'--vests in the trustee for the benefit of the estate." *Id.* (citations omitted). "The debtor has no standing to pursue such causes of action." *Id.*

Ms. Auday argues that--even if the Trustee is the real party in interest for recovering monetary damages on behalf of the bankruptcy estate--she should be allowed to proceed with respect to her claim for injunctive relief, particularly her request for reinstatement. Ms. Auday argues a distinction can be made between monetary and injunctive relief when determining whether the claim is part of the bankruptcy estate. Ms. Auday cites two appellate cases, both from the Eleventh Circuit, in support of this proposition. In *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002), the Eleventh Circuit considered whether the doctrine of judicial estoppel would apply when a debtor failed to disclose his employment discrimination claim to the bankruptcy court. In addition to monetary relief, the plaintiff sought injunctive relief to prohibit his former employers, the defendants, from engaging in illegal employment practices and to require defendants to adopt lawful

practices. *Id.* Although the Court determined the doctrine of judicial estoppel applied to the plaintiff's claim with respect to monetary relief, it determined the plaintiff could proceed with his claims for injunctive relief. *Id.* at 1289. *See Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1297 (11th Cir. 2003) (relying on *Burnes*, the court concluded the doctrine of judicial estoppel did not apply with respect to the plaintiff's claim for injunctive relief, namely, her request to be reinstated, because it "would have added nothing of value to the bankruptcy estate even if she properly disclosed it"). Finally, Ms. Auday cites a district court case, *Roca v. Kraft Foods Global, Inc.*, 792 F. Supp. 2d 245, 250 (D.R.I. 2011), in which the court expressly held that a plaintiff has standing to pursue an undisclosed claim for injunctive relief.

Ms. Auday raises a novel argument that has not been addressed by the Sixth Circuit, though the issue has been examined by courts in other circuits. None of the cases cited by Ms. Auday, however, are binding on this Court. Moreover, the Eleventh Circuit did not determine with respect to either *Burnes* or *Barger* (which relied on *Burnes*) that the plaintiff had "standing" to pursue his or her claim for injunctive relief. Rather, the discussions cited by Ms. Auday were directed solely toward the issue of judicial estoppel. In *Barger*, the Court decided the issue of standing before it ever reached this issue, and in *Burnes*, the Court never even broached the topic of standing. Finally, even though the district court in *Roca* expressly held the plaintiff had standing to pursue the claim for injunctive relief, courts across the country have reached divergent answers to this question. *See, e.g., Paul v. Coca-Cola Enterprises, Inc.*, CIV.A. 06-796, 2007 WL 1451663, at *2 (W.D. Pa. May 15, 2007) ("The well-reasoned case law addressing the issue likewise holds that claims for lost post-petition earnings, including front pay and back pay, are part of the bankruptcy estate and do not fall within the earnings exemption set forth in 11 U.S.C. § 541(a)(6)."); *In re Ballard*, 238 B.R. 610,

624 (Bankr. M.D. La.1999) ("The cause of action for lost post-petition wages is itself a pre-petition interest in property.").

    While the Sixth Circuit may not have expressly stated Ms. Auday may or may not proceed as the real party in interest with respect to her claim for injunctive relief, there are reasons for this Court to assume the Sixth Circuit intended the latter. First, as noted by Defendant, the Sixth Circuit *sua sponte* requested that the parties address the issue of standing prior to oral argument (Court File No. 56 at 4; *see* Court File No. 56-1 ("Ex. A")). In a written letter-brief response, Ms. Auday raised this same argument--that is, that she had standing to pursue her claim for non-monetary relief (Ex. A. at 2). Despite Ms. Auday's efforts to parse out her monetary and non-monetary claims, the Sixth Circuit made no such distinction in its decision.[2] The Court further notes that an interpretation that focuses on whether the plaintiff has standing to pursue her "cause of action" rather than on the various "remedies" available is in keeping with precedent in this circuit that has stated the entire "cause of action" belongs to the bankruptcy estate. *Bauer*, 859 F.2d at 441.

    Additional facts pertaining to this case support the conclusion that all of Ms. Auday's claims belong to the bankruptcy estate. For instance, Ms. Auday argues in her brief that she is seeking injunctive relief in the form of reinstatement. Yet, upon more careful review, her complaint actually

---

[2] In fact, the Sixth Circuit acknowledged both legal and equitable interests in property could be considered part of the estate. In particular, the court explained:

> When Auday filed for bankruptcy, her estate became the owner of all of her property, including tort claims that accrued before she filed her bankruptcy petition. *See* 11 U.S.C. § 541(a)(1) (defining the estate as "all legal or equitable interests of the debtor in property" when the debtor files for bankruptcy); *In re Cottrell*, 876 F.2d at 543. Her age-discrimination claim against Wet Seal is no different.

*Auday*, 698 F.3d at 904.

7

states she is seeking reinstatement "or, in the alternative, front pay and benefits in lieu of reinstatement." Thus, the "injunctive relief" she is seeking could still potentially be reduced to a monetary award. The Court also observes that even if the claims did not belong to the bankruptcy estate, Ms. Auday never listed them as "exempted property" in her bankruptcy petition nor is there any indication the Trustee ever abandoned the claims such that Ms. Auday could proceed as the real party in interest. *See Auday*, 698 F.3d at 905.

Accordingly, in light of the relevant law and the facts of this case, the Court concludes the Trustee, as the representative of Ms. Auday's bankruptcy estate, is the only real party in interest for purposes of litigating Ms. Auday's employment discrimination claims. *See id.* at 905-06; *Brooks v. Cent. Irr. Supply, Inc.*, 10-CV-13717, 2012 WL 6579582, at *5 (E.D. Mich. Dec. 17, 2012) (determining only the Chapter 7 bankruptcy trustee could bring the plaintiff's employment discrimination claims as the real party in interest because the plaintiff's claim belonged to the bankruptcy estate).

### B.    Scope of Sixth Circuit's *Auday* decision

Ms. Auday argues the Court should consider the possibility of joinder of the Trustee as a party. The Sixth Circuit's decision, however, clearly states the limited nature of the remand. In the final paragraph of the decision, the Sixth Circuit expressly states: "Accordingly, we vacate the judgment and remand the case to the district court for the purpose either of dismissing the case without prejudice or of allowing Auday to amend the complaint to substitute the Trustee as the plaintiff." *Auday*, 698 F.3d at 905-06.

Ms. Auday directs the Court to other language in the decision, but her arguments are unavailing. First, she notes the first paragraph of the decision states: "We thus must vacate the

judgment and return the case to the district court either to allow Auday to dismiss the action without prejudice or to allow Auday to amend the complaint." *Id.* at 903. This statement is not inconsistent with the last paragraph, however, which clearly indicates the options available for amending the complaint. Ms. Auday also notes that the Sixth Circuit opined a "district court under some circumstances may join or substitute the real party in interest--here, the Trustee." *Id.* at 905. The operative words, however, are "under some circumstances" and "may." There is no indication from the context of the broader decision that joinder is an option here given that the Trustee is the only real party in interest. Ms. Auday also fails to offer any legal basis in support of her argument.

In sum, the Court will interpret the Sixth Circuit's decision exactly as it is written. The Court has two options: either (1) dismiss the case without prejudice or (2) allow Ms. Auday to amend the complaint and substitute the Trustee as the real party in interest.

### C.     Rule 17(a), Rule 25, and the Statute of Limitations

The Court must next determine whether substitution of the Chapter 7 Trustee is proper in this case and whether the applicable statute of limitations has expired. *Auday*, 698 F.3d at 905. *See Knight v. New Farmers Nat. Bank*, 946 F.2d 895 (6th Cir. 1991) (noting district courts "should first consider ratification or substitution by the trustee prior to dismissing plaintiffs' case"). Ms. Auday identifies two means by which the Court can add the Trustee as a party to the case. First, Ms. Auday contends the Trustee can be added to the case as a party because he previously ratified her lawsuit. Moreover, to the extent his actions occurred after the statute of limitations had run, Ms. Auday argues the Trustee's ratification should "relate back" to the filing of the complaint pursuant to Fed. R. Civ. P. 15. Alternatively, Ms. Auday argues the Court should allow the Trustee to be substituted pursuant to Fed. R. Civ. P. 25 because the case involved a transfer of interest. Defendant disputes

each of these claims and argues there is no legal basis upon which the Trustee can be added as a party to the case. Accordingly, Defendant argues the case must be dismissed.

### 1. Rule 17(a)

Ms. Auday first argues the Court should add the Trustee as a party in the case pursuant to Rule 17(a)(3) of the Federal Rules of Civil Procedure. Rule 17(a)(3) provides that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed. R. Civ. P. 17(a)(3). "After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest." *Id.* The Advisory Committee Notes explain the overarching purpose of the provision is to protect against "forfeiture and injustice." *See* Fed. R. Civ. P. 17, Adv. Comm. Notes (1996). In making this determination, a court should consider "whether there has been an honest mistake as opposed to tactical maneuvering, unreasonable delay, or undue prejudice to the non-moving party." *F.D.I.C. v. Graham*, 2011 WL 1429218, at *6 (quoting *Tool–Plas Sys., Inc. v. Camaco*, LLC, 2010 WL 1347686, *2 (E.D. Mich. Mar. 31, 2010)).

In directing this Court to consider whether substitution is proper under Rule 17(a)(3), the Sixth Circuit also briefly referenced *Wieburg v. GTE Sw. Inc.*, 272 F.3d 302 (5th Cir. 2001). In *Wieburg*, the Fifth Circuit was confronted with a similar scenario where the debtor failed to disclose her pre-petition employment discrimination claims to the bankruptcy court. After determining the trustee was the real party in interest and had exclusive standing to bring the debtor's legal claims, the district court dismissed the case. *Id.* at 305. The Fifth Circuit declared the district court abused its discretion in reaching its decision because it failed to consider the "less drastic alternatives" of

10

ratification or joinder of the trustee taking into account Rule 17(a)'s "purpose of preventing forfeitures" as well as the facts of the case. *Id.* at 309. In particular, the court noted:

> [I]t is unclear whether the district court considered the impact of the dismissal on Wieburg's creditors, who are owed approximately $40,000. Because the statute of limitations has expired, the Trustee is precluded from asserting the discrimination claims in a subsequent action. Thus, the district court's dismissal of the action means that the creditors will have no possibility of any recovery.

*Id.* at 308-09.

Taking into account both the Advisory Note to Rule 17 and the *Wieburg* decision, the Court is extremely sympathetic to the concerns of forfeiture and injustice in this case. Similar to the circumstances in *Wieburg*, here, Ms. Auday's creditors are owed a sum-certain and because her THRA claims are now time-barred, there is a possibility that the creditors may be precluded from recovery, especially if the Court determines substitution or ratification is improper. On the other hand, the Court observes that a number of district courts facing similar decisions still ultimately decided Rule 17(a)(3) had not been met and dismissal was appropriate. *See Rodriguez v. Mustang Mfg. Co.*, 07-CV-13828, 2008 WL 2605471, at *3-4 (E.D. Mich. June 27, 2008) (determining Rule 17(a)(3) had not been met because, among other things, the debtor had already been given a reasonable amount of time when he had at least two years to ascertain the real party in interest prior to his request, further delay was prejudicial to the defendant given concerns about the availability of evidence for discovery since nearly four years had passed since the injury, and the plaintiff's conduct was not the result of a "reasonable mistake"); *see also Van Sickle v. Fifth Third Bancorp*, 12-11837, 2012 WL 3230430 (E.D. Mich. Aug. 6, 2012) (concluding Rule 17(a)(3) should not be applied and the case should be dismissed without prejudice because there was no excusable mistake when it was "clearly established that the instant claims belonged to Van Sickle and the Marina's

11

bankruptcy estates, and the trustee is the real party in interest").

Here, Ms. Auday contends the Trustee can proceed as a party in this case under Rule 17(a)(3) because he explicitly ratified her lawsuit before it was filed and subsequently filed affidavits to reaffirm his ratification. Defendant, on the other hand, argues the Trustee never ratified Ms. Auday's employment discrimination claims. Among other things, Defendant notes that the Trustee's act of filing an application for Ms. Auday's counsel to proceed as special counsel did not serve as a ratification of the suit because Ms. Auday, not the Trustee, proceeded with the lawsuit. Moreover, with respect to the affidavits, Defendant argues the Trustee did not expressly authorize a continuation of the case or agree to be bound by the Court's decision. Rather, Defendant contends the language in the first affidavit is conditional, and the language in the second affidavit at no point purports to bind the Trustee to the outcome of the case.

For ratification to be an option under Rule 17(a),[3] the ratifying party usually must "(1) authorize continuation of the action and (2) agree to be bound by its result." *In re Leonard*, 11-52028, 2012 WL 1565120, at *4 (Bankr. E.D. Tenn. May 2, 2012) (quoting *Icon Group, Inc. v. Mahogany Run Dev. Corp.*, 829 F.2d 473, 478 (3d Cir.1987)). The Court concludes Ms. Auday's first argument--that is, that the Trustee ratified this lawsuit when he sought special counsel to proceed on behalf of the estate--lacks merit. Although the Trustee sought to employ Ms. Auday's present counsel as "special counsel" to pursue the employment discrimination claims and his request was even approved by the bankruptcy court, he failed to follow-through with his request. Rather than proceed with special counsel to pursue Ms. Auday's claims on behalf of the bankruptcy estate, he

---

[3] Although the court in *Auday* did not expressly mention ratification as an option, it does not appear that ratification is wholly inapplicable (unlike joinder) or that the order excludes ratification given that ratification is discussed as an option in *Wieburg*.

allowed Ms. Auday to directly pursue her claims. Even the Sixth Circuit in its *Auday* decision observed that the Trustee did not follow-through with pursuing the claims. *See Auday v. Wet Seal Retail, Inc.*, 698 F.3d 902, 904 (6th Cir. 2012) (noting the bankruptcy court granted the Trustee's application to allow Ms. Auday's counsel to pursue the claim on behalf of the bankruptcy estate but "[f]or reasons of his own, the Trustee did not follow this path"). The Trustee's actions did not demonstrate either an attempt to "authorize continuation" of the litigation or a request to be "bound by its result." Therefore, the Court cannot conclude his actions ratified the lawsuit.

Ms. Auday also argues that the Trustee ratified or reaffirmed his earlier attempt to ratify her lawsuit when he filed two subsequent affidavits during the course of the litigation. The first affidavit was filed as an exhibit to Ms. Auday's response brief to Defendant's motion for judgment on the pleadings. The second affidavit was attached as an exhibit to Ms. Auday's motion to alter the judgment.[4] The relevant language in the first affidavit filed November 15, 2010 stated: "I understand that as the Trustee in Bankruptcy for the Estate of Karen Auday, I technically own her damage claims against Wet Seal. To the extent I am a real party in interest, I will agree to the addition of myself, as Trustee, if that is necessary to allow the further advancement of the claim against Wet Seal" (Court File No. 16-3, ¶ 9). The relevant language in the second affidavit filed April 19, 2011 stated: "Ms. Auday's employment discrimination claim is an asset of her bankruptcy estate that has not yet accrued in a liquid and distributable form. Based on this reality, I determined that it was in the best interest of the creditors for me to exercise my right under Rule 6009 of the Federal Rules of Bankruptcy Procedure to prosecute a pending action on behalf of the creditors after the Auday's

---

[4] When these declarations were initially filed, Defendant objected on technical grounds that the declarations were undated and invalid under 28 U.S.C. § 1746.

13

discharge. Because Ms. Auday is [a] Chapter 7 debtor, and not a Chapter 13 debtor, any proceeds from a lawsuit that come into her bankruptcy estate would go directly to benefit her creditors" (Court File No. 38-1, ¶ 7).

As Defendant aptly notes, neither of these paragraphs, which are illustrative of the rest of the affidavits' contents, demonstrates the Trustee expressly ratified Ms. Auday's lawsuit. An affidavit can certainly be offered as proof of ratification. *See CWCapital Asset Mgmt., LLC v. Chicago Properties, LLC*, 610 F.3d 497, 502 (7th Cir. 2010) (noting the trustee submitted an affidavit in response to a judgment on the pleadings ratifying the servicer's suit on behalf of the bank). However, the affidavit must still satisfy the above criteria. *See In re Leonard*, 11-52028, 2012 WL 1565120, at *3 (Bankr. E.D. Tenn. May 2, 2012) (noting the affiant stated he "authorizes" the continuation of this adversary proceeding and "agrees to be bound by the result"). Here, while the language in the affidavits appears to be informing the Court that the Trustee is aware of the claims and that he intends or believes he is prosecuting the claims, neither affidavit is an express authorization that the case continue or that binds the Trustee to the Court's determination. Moreover, even if these affidavits were sufficient to establish ratification, the claims would be time-barred and any argument that the claims should "relate back" would be unavailing.[5] Accordingly, the Court

---

[5] Ms. Auday's THRA claims are subject to a one-year statute of limitations. Tenn. Code Ann. § 4-21-311(d). Therefore because the affidavits were filed outside the applicable statute of limitations, those claims would generally be time-barred. Ms. Auday argues Fed. Rule Civ. P. 15(c)(1)(C) provides a means by which her claims could still "relate back" to the date the original complaint was filed. However, in *Asher v. Unarco Material Handling, Inc.*, 596 F.3d 313 (6th Cir. 2010), the Sixth Circuit explained the plain language of Rule 15(c)(1)(C) only allows for changes to the defendants in the complaint, not the plaintiffs. *Id.* at 318. Changes to plaintiffs are only allowed in limited contexts, such as when it involves "corrections of misnomers or misdescriptions." *Id.* Here, however, even assuming 15(c)(1)(C) applied, Ms. Auday has failed to satisfy one of its sub-requirements--that is, that the Trustee "knew or should have known that the action would have been brought against it, *but for a mistake concerning the proper party's identity*." *See* Fed. R. Civ.

14

cannot conclude the Trustee formally ratified the lawsuit through any of his prior actions, though he certainly was aware of the proceedings. Thus, after considering all of the parties' arguments, the Court has no basis for granting relief under Rule 17(a)(3).

### 2. Substitution pursuant to Fed. R. Civ. P. 25

Alternatively, Ms. Auday argues the Court should substitute the Trustee into the case pursuant to Fed. R. Civ. P. 25. Rule 25 provides that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." For Rule 25(c) to apply, the transfer must generally occur during the pendency of the litigation. *See* 7C Fed. Prac. & Proc. Civ. § 1958 (3d ed.). Defendant argues Rule 25(c) is inapplicable because no transfer took place during the course of the litigation. Instead, Defendant argues the Trustee has always owned Ms. Auday's interest in her employment discrimination claims even prior to the commencement of the instant lawsuit.

Interestingly enough, in *Bauer v. Commerce Union Bank*, 859 F.2d 438 (6th Cir. 1988), the Sixth Circuit affirmed a district court's decision to substitute the Trustee into the case pursuant to Fed. R. Civ. P. 25(c) under relatively similar circumstances. In *Bauer*, the plaintiffs filed for Chapter 7 bankruptcy and failed to disclose that they had a potential legal claim against the defendants. *Id.* at 439. After the bankruptcy was discharged, however, the plaintiffs brought an "outrageous conduct" action against the defendants in federal district court. *Id.* The defendants sought dismissal on the grounds that the plaintiffs' claim belonged to the bankruptcy estate and the plaintiffs lacked

---

P. 15(c)(1)(C) (emphasis added). Because the Trustee made a conscious decision to allow Ms. Auday to pursue her employment discrimination claims, it is difficult for the Court to now characterize that decision as a "mistake" in light of the Trustee's vast experience and knowledge.

standing to sue. *Id.* Soon thereafter, the plaintiffs sought to reopen the bankruptcy case and the trustee was reappointed. The Sixth Circuit observed that "[t]he trial court ordered [the trustee] substituted as party plaintiff pursuant to Fed. R. Civ. P. 25(c), which permits the court to order substitution '[i]n case of any transfer of interest.'" *Id.* at 441. Moreover, while the issue was not ripe for appellate review, the Sixth Circuit further noted "[e]ven if the order of substitution were immediately appealable, we would be unable to detect so much as a hint of any abuse of discretion here." *Id.* at 441-42. *See Clifton v. Tennessee Prof'l Assistance Program*, 3:10-0330, 2010 WL 1856513, at *7-8 (M.D. Tenn. May 10, 2010) (determining the trustee who was the real party in interest could file a notice of substitution under Rule 25(c), where the debtor had attempted to pursue her legal claim after her bankruptcy cases had been discharged and dismissed but had never disclosed her claim to the bankruptcy courts).[6]

In light of both *Bauer* and *Clifton*, the Court will exercise its discretion and order that the Trustee be substituted into the case pursuant to Rule 25(c), which will enable him to pursue Ms. Auday's THRA claims and the claims will not be time-barred. For the sake of clarity, the Court requests that the Trustee file a notice of substitution within fourteen days of the entry of the accompanying order indicating the exact name that should be listed in the caption in place of Ms. Auday's name.

---

[6] The Court further observes that Defendant cited two cases in support of its position. While the cases are instructive, neither directly affects this Court's determination. For instance, *Raymond v. Tenn. Valley Auth.*, 2012 WL 2191625, at *2 (E.D. Tenn. June 14, 2012) applied to vastly different facts involving the transfer of property following a foreclosure. Moreover, although in *Barger v. City of Cartersville*, 348 F.3d 1289, 1293 (11th Cir. 2003), the court determined Rule 25(c) applied where a bankruptcy petition was filed after the plaintiff had already initiated suit for her legal claim, the Eleventh Circuit expressed no view on other scenarios in which Rule 25(c) would or would not apply.

16

**D.      Conflict of Interest**

The remaining issue is whether representation of the Chapter 7 Trustee by Ms. Auday's counsel, Burnette, Dobson & Pinchak ( "Counsel"), creates a potential or actual conflict of interest. The Court originally raised this issue at the December 14, 2012 status conference out of concern that the interests of Counsel may be inherently adverse to the interests of the bankruptcy estate. Defendant agrees that the Court's concern is valid and argues concurrent representation by Counsel violates both Rule 1.7 of the Tennessee Rules of Professional Conduct and the Bankruptcy Code. Counsel and the Trustee, however, argue any potential conflicts can be effectively waived in this case under Rule 1.7(b) notwithstanding the general prohibition under Rule 1.7(a). Counsel and the Trustee also argue that a valid written waiver has been executed and their actions are consistent with what was envisioned by the Bankruptcy Code.

As the parties have both observed, the Tennessee Rules of Professional Conduct generally prohibit concurrent representation that may result in a conflict of interest. Rule 1.7(a) provides that an attorney "shall not represent a client if the representation involves a concurrent conflict of interest." Such a conflict exists if "(1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." *Id.* Such a conflict can be waived, however, under Rule 1.7(b) if the following criteria are met:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law;
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

17

(4) each affected client gives informed consent, confirmed in writing.

*Id.*

The parties agree that the concurrent representation in this case by Counsel could result in a potential or actual conflict of interest. However, Counsel contends all of the criteria necessary to waive the potential or actual conflict have been satisfied pursuant to Rule 1.7(b). While the Court does not question that the first factor has probably been satisfied--that is, after hearing Counsel's arguments at the May 15, 2013 hearing as well as reading their pre- and post-hearing briefs, the Court is convinced Counsel reasonably believes they can represent both Ms. Auday and the estate--the Court cannot conclude that the remaining factors have been satisfied. Accordingly, the Court will address those three factors below.

### 1. Representation not Prohibited by Law

The second factor asks whether Counsel's representation would be prohibited by law. While the Court will not go so far as to hold Counsel's representation in this case is violative of the Bankruptcy Code, the Court is profoundly concerned that such representation runs counter to some of the Bankruptcy Code's provisions. As it pertains to the actions of the bankruptcy court, the Code requires that the bankruptcy court consider potential conflicts of interest when appointing special counsel for the Trustee. For example, pursuant to 11 U.S.C. § 327(a), "the trustee, with the court's approval, may employ one or more attorneys . . . *that do not hold or represent an interest adverse to the estate, and that are disinterested persons*, to represent or assist the trustee in carrying out the trustee's duties" (emphasis added). The Bankruptcy Code defines a "disinterested person" as someone who "*does not have an interest materially adverse to the interest of the estate* or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to,

18

connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14)(C) (emphasis added). Moreover, the trustee may also request the bankruptcy court's approval to employ an attorney that has represented the debtor "for a specified special purpose, other than to represent the trustee in conducting the case . . . if in the best interest of the estate, *and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed*." 11 U.S.C. § 327(e) (emphasis added).

Thus, the Trustee can seek approval from the bankruptcy court to have the debtor's former counsel proceed as special counsel. However, the attorney cannot have or represent an interest that is "adverse" to the debtor or the estate and that is related to the matter for which he was hired. Here, it is very clear that Counsel's interest in representing Ms. Auday not only may but in all likelihood will conflict with its interest in representing the estate. For instance, in the context of settlement negotiations, it is certainly possible that Defendant could make an offer that would satisfy the amount Ms. Auday owed to the creditors. This would satisfy the creditors and avoid the risk of an adverse jury verdict. Yet if the case went to trial it is possible that recovery could be even greater, and any excess sum would go to Ms. Auday and Counsel. However, a trial would risk an adverse jury verdict that could result in the creditors receiving nothing. Concurrent representation of both the estate and Ms. Auday under these circumstances is rife with the potential of creating a conflict and Counsel would be pulled in different directions given its respective duties owed to each client. Furthermore, as noted by Defendant, the potential for a conflict is even greater where, here, Counsel has already invested funds in the "six-figures" to represent Ms. Auday in the preceding litigation. Thus, Counsel also has a personal interest in maximizing recovery perhaps to the detriment of the estate in order to recover its fees and expenses. In considering these hypothetical situations, the

19

Court is not implying Counsel would act nefariously or would intentionally act against the interests of the estate or Ms. Auday.[7] Rather, the Court is merely observing that the potential for conflict is inherent by the nature of the concurrent representation in this case. This is the very reason the profession has standards to avoid conflicts because of the inherent danger they present and also because of the destructive impact they have on the profession itself.

Bankruptcy courts that have been presented with similar scenarios have reached different conclusions as to how the potential or actual conflict should be handled. However, of the courts that determined a potential or actual conflict existed, some of them identified concerns similar to those raised by this Court. For instance, in *In re Mercury*, 280 B.R. 35 (Bankr. S.D.N.Y. 2002), the bankruptcy court determined a conflict of interest existed where the debtors' counsel in a personal injury action was retained as special counsel for the trustee to assist with the settlement of the personal injury case. The court explained, "[t]here is an inherent adversity between a debtor and his or her Chapter 7 trustee. While the differing interests of trustee and debtor may never blossom into open controversy in a particular case, actual conflict may arise on any of a host of matters . . . . An attorney can no more represent the interests of both trustee and debtor than he can the interests of debtor and creditor in a Chapter 7 case. Nor, of course, can a lawyer switch sides by abandoning a client during controversy and representing his adversary against the client in the very same controversy." *Id.* at 60. Notably, counsel failed to disclose this apparent conflict when it applied to be retained as special counsel to the trustee.

_____

[7] To the contrary, the Court holds the law firm of Burnette, Dobson & Pinchak in the highest esteem as do all the judges on this court. The Court has long experience with all members of this firm and knows that the firm practices law to the highest ethical standard. Nothing in this opinion should be read to suggest otherwise.

Similarly, in *In re Rice*, 224 B.R. 464 (Bankr. D. Or. 1998), the bankruptcy court determined the debtor's personal injury attorney could not represent the trustee for purposes of litigating the personal injury claims. Although much of the court's analysis pertained to other matters (and it appears the debtor's attorney had already declined the invitation to serve as special counsel), the bankruptcy court still made the following observations: "If the trustee successfully concludes the suits, the defendants will provide a certain pot of money as damages. These moneys must then be allocated to the various elements of the personal injury claim recognized by state law. This allocation process places Ms. Rice and the trustee in a direct adversarial position. . . . To summarize, both the estate and Ms. Rice have a continuing interest in the personal injury claims and . . . their respective interests are perforce adversarial. For this reason Ms. Rice needs to retain her own attorney to represent her interests during the litigation process . . . Whether or not she continues to retain Mr. Smith, under [§ 327(e) and the relevant state statute,] he cannot represent the trustee in this matter." *Id.* at 470. *But see In re Vouzianas*, 259 F.3d 103 (2d Cir. 2001) (affirming a bankruptcy court decision appointing plaintiff's former attorney as special counsel to the trustee to litigate a personal injury claim; the court acknowledged that this representation caused some "blurring of the lines between [the attorney's] representation of debtor and his representation of the estate" but concluded there was an interest in keeping intact the previous legal relationship and the bankruptcy court did not therefore commit clear error).

This is a matter that as far as the Court is aware is novel in this district. Neither this Court nor the Bankruptcy Court has spoken at any length of the inherent conflict with a trustee being represented by the same counsel as the debtor. It is not the Court's intention to review the bankruptcy court's actions in this case nor is it implying concurrent representation in every

circumstance would violate the Bankruptcy Code. The Court also recognizes that the bankruptcy court here approved the Trustee's request to appoint Ms. Auday's attorneys as special counsel, and the bankruptcy court was not apprised by the parties of the clear conflict of interest. Finally, the Court understands bankruptcy courts have procedures in place to review decisions made by the Trustee, and the debtor and creditor have means by which they can object to the Trustee's decisions, though such steps are often done retrospectively rather than prospectively. At that point the harm of the conflict of interest would have already occurred. The point of the rules against conflicts is to avoid them in the first place, not to try to correct the damage after the fact.

By highlighting the issues here, the Court is simply observing that bankruptcy courts have found under similar circumstances that a conflict may be inherent and, as a district court, this Court has an independent obligation to consider whether a potential or actual conflict exists. This Court also must be proactive rather than reactive to any potential conflicts in this case. Thus, as it pertains to the second factor listed in Rule 1.7(b), the Court finds that concurrent representation by Counsel at a minimum raises red flags as to its permissibility under the Bankruptcy Code and at a maximum is in violation of the Bankruptcy Code.

### 2. Assertion of Claim Against Other Client

With respect to the third factor, the Court must consider whether Counsel's representation could involve the assertion of a claim by Ms. Auday against the Trustee or vice-versa in this proceeding or another proceeding before a tribunal. This could arise in a variety of situations. It is possible Ms. Auday could assert a claim against the Trustee for his handling of this claim. The Trustee could assert a claim against Ms. Auday contesting her right to certain proceeds of the lawsuit. Moreover, Counsel in its representation of Ms. Auday likely received confidential

communications from her. If those communications could impair her case against the Trustee, Counsel has a professional obligation to reveal those communications to the Trustee while at the same time a duty to protect those communications. Such confidential communications could prove useful to the Trustee against Ms. Auday in the bankruptcy proceeding. Counsel as well as the Trustee, however, contend this would not be a problem in part because in the written consent signed by both the Trustee and Ms. Auday, Ms. Auday acknowledges that she understands the Trustee may be made privy to certain confidential information during the course of litigation. However, the written consent does not inform Ms. Auday that her private communications with Counsel that are protected by law could be revealed to the Trustee who could then use that information to her detriment in the bankruptcy proceedings. This in and of itself highlights the inherent conflict of interest in this case and is reason enough to reject the concurrent representation.

As another illustration, the Trustee may reach a point during the litigation where he needs to value Ms. Auday's legal claim to determine whether it is worth proceeding to trial or whether he should accept a settlement agreement. Evaluating an asset in bankruptcy is a common duty or task of a trustee. If the asset is real estate or other tangible property, the Trustee can rely upon the advice of a body of independent, objective expert appraisers. There may be sales of comparable property in the area that provide some objective information as to value. In many cases opinions will be received from more than one source and the opinions as to value will be compared. Lawsuits, however, are very different. We do not have a body of independent, objective expert appraisers as to the value of a lawsuit. Attorneys representing the parties will place a value on the lawsuit guided by their experience and their knowledge of the facts of the case. Some of those facts are gleaned from confidential communications with the client. In evaluating a case, a seasoned attorney will

want to learn not only the strengths of the case but also the weaknesses of the case. There may be problems relating to the client that the client has shared with the attorney that the attorney understands weakens the case. These communications, however, cannot be shared with anyone else. This protection applies to encourage candor between the client and the attorney. However, the attorney realizes that if the client has to testify or if the information becomes known, it will lessen the value of the case. Information such as this informs the attorney regarding the value to place on the lawsuit. In a case such as this, the Trustee must rely upon Counsel as to valuation of this lawsuit. Counsel, however, is under an obligation to not reveal confidential information that damages Ms. Auday. Such information although critical for the Trustee to properly value the lawsuit could be used against Ms. Auday in opposing a claim on her part or later in bankruptcy court.

Another problem is created with respect to how the Trustee puts the information to use since the Trustee is not bound to keep the information confidential. In fact, the Court can envision circumstances where the Trustee is duty bound to disclose the information. He may need to glean additional facts about the case from Counsel in order to decide how to proceed. For instance, he may need to inquire about the weaknesses of the case. He may also want to know if there is any harmful information about Ms. Auday that might come out at trial that could ultimately affect the success of the case. Depending upon the information obtained, this could tip the scales toward the Trustee deciding to enter into a settlement agreement. Although such information may pertain to confidential communications between Ms. Auday and Counsel, the lawyers would be duty bound to convey this information to the Trustee so that he can fulfill his duties to the estate.

An additional problem is created by the Trustee having to rely upon Counsel in evaluating the lawsuit when Counsel has an interest in the case. The Trustee is not relying upon an independent,

disinterested, objective third-party such as one would find in a real estate situation. Rather, Counsel is itself an interested party. If this was a real estate transaction, it would be like the Trustee relying upon the advice of a speculator who has an interest in the subject property, and the Trustee relying upon that speculator in determining the value of the real property. In such a scenario, the Trustee would not be fulfilling his fiduciary duties and would be subject to strict liability.

Counsel suggested that the Trustee was not a full client but was some form of lesser client and that the primary responsibility would be to Ms. Auday. Unfortunately, the law does not recognize this type of limited representation where a client is not afforded the full degree of representation. For the Trustee to agree to such limited representation would mean that he had employed Counsel that would not act in the best interest of the Trustee or the bankruptcy estate. This would violate the Trustee's fiduciary duties and would subject the Trustee to suit by the creditors, the beneficiaries of the estate. Counsel and the Trustee also note that there would be minimal crossover between what happens in the instant case and in the bankruptcy proceeding because different attorneys are involved. This ignores the fact that the primary asset of the bankruptcy estate at this point is this lawsuit. It hardly seems possible that the Trustee, responsible for the single largest asset of the estate, would not have to take a great interest in this litigation and take whatever knowledge gained from this litigation into the bankruptcy proceedings. It also ignores the obligation of the Trustee to inform himself as to the value of this asset, the lawsuit, so that he can make reasonable decisions as to whether to enter into settlement discussions, whether a reasonable settlement amount has been proposed, and whether to proceed to trial. While the Court does not discount Counsel and the Trustee's averments, the Court deems the potential for an assertion of a claim or defense by the Trustee against Ms. Auday or by Ms. Auday against the Trustee to be great.

### 3. Written Waiver

Finally, Counsel argues any potential or actual conflict has been waived because the Trustee and Ms. Auday entered into a signed, written agreement that was reviewed and signed by Ms. Auday's bankruptcy counsel. The document entitled "Mutual Consent to Joint Representation" contains several provisions to which Ms. Auday and the Trustee agreed (Court File No. 57-1). The agreement states Ms. Auday understands the Trustee represents her bankruptcy estate, that her legal claims against Defendant are part of the estate, and that the Trustee has the sole right to direct representation in this case. The agreement further states, as noted above, that Ms. Auday understands the Trustee may be made privy to some of her confidential information to the extent it is necessary for him to direct the litigation. With respect to recovery, the agreement provides:

> Likewise, the Trustee understands that Ms. Auday may be entitled to a monetary recovery representing any amount of money in excess of what is owed to Ms. Auday's creditors or any amount of money that is paid in lieu of reinstatement and front pay. Accordingly, the Trustee agrees to take this into consideration, along with the advice of counsel, when attempting to settle and compromise Ms. Auday's claims.

*Id.* Finally, the agreement states that both Ms. Auday and the Trustee agree that concurrent representation "is the most effective way to prosecute Ms. Auday's claims and is in the best interest of both parties." *Id.*

While the Mutual Consent to Joint Representation is a written, signed document executed by the Trustee and Ms. Auday, the Court finds that the document as it presently stands is insufficient to demonstrate informed consent. As the Court noted at the hearing, its greatest concern about the agreement is the lack of transparency. While the Court is not asking Ms. Auday and the Trustee to include their legal strategy in the document or the exact division of assets, there are some significant issues that go unaddressed. For instance, as noted earlier, the Court is concerned about the

26

implications of Ms. Auday's agreement that she "understands" the Trustee may become privy to some of her confidential information. The agreement does not expressly contemplate what would happen, however, if such information was obtained by the Trustee and he chose to later use this information against her in the bankruptcy proceeding. While the parties contend this scenario would be highly unlikely--in part because the Trustee is only peripherally involved in the litigation--the Court does not believe Ms. Auday's interests and the Trustee's interests under this scenario are adequately addressed. The Court also observes that the agreement does not expressly address how Counsel will fulfill its fiduciary duties owed to the creditors as well as its duties or responsibilities owed to Ms. Auday in the event of a conflict. Of course, the agreement states that Ms. Auday understands the Trustee directs the course of litigation and that the Trustee agrees to take into account any monetary recovery that Ms. Auday may be able to obtain in excess of what is owed to the creditors. This language, however, does not explain how the Trustee would resolve a conflict that arises when the estate and Ms. Auday's interests are in conflict. In the face of such clear conflicts, a putative waiver should address in considerable detail the nature and extent of each potential conflict, how that conflict could harm the client, and an acknowledgment on the part of the client that the client understands how she could be harmed, is willing to undertake that risk, and consents to the joint representation. In sum, the Court finds the consent form signed by Ms. Auday and the Trustee inadequately informs Ms. Auday of the potential for conflict.

In this regard the Court also has concerns the Trustee aside from Counsel would have a conflict of interest here. The Trustee operates as a fiduciary. As such he is strictly liable for acts committed willfully and intentionally in violation of his fiduciary duties. "A bankruptcy trustee is liable personally only for acts willfully and deliberately in violation of his fiduciary duties." *In re*

*McKenzie*, --- F.3d ----, 2013 WL 2274006, *5 (6th Cir. May 24, 2013)(quoting *Ford Motor Credit Co. v. Weaver,* 680 F.2d 451, 462 (6th Cir.1982)). At the hearing the Trustee discussed the practical advantages of retaining Counsel in this case. However, even though there may be practical advantages to a certain course of action, that course of action may still conflict with the Trustee's fiduciary duties and an attorney's ethical obligations. For example, a Trustee has a duty to "maximize the value of the estate." *Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 352 (1985) (citing 11 U.S.C. § 704(1)). A Trustee's duty in maximizing the value of the estate by its very nature must take into account the interests of all parties who retain an interest in the estate; this even includes the debtor to the extent she has also retained an interest in certain property. *See In re Dow Corning Corp.*, 255 B.R. 445, 523 (E.D. Mich. 2000), *aff'd and remanded on other grounds*, 280 F.3d 648 (6th Cir. 2002) ("A chapter 7 trustee's fiduciary duty goes to both the creditors and the debtor in order to maximize the value of the estate."); *see also In re Hutchinson*, 132 B.R. 827, 832 (Bankr. M.D.N.C. 1991), *affirmed and remanded on other grounds*, 5 F.3d 750 (4th Cir. 1993) ("A trustee also acts as a custodian of estate property in which a debtor claims an interest and, as such, has a duty to exercise reasonable diligence to preserve and protect such property." (citing *In re Reich*, 54 B.R. 995 (Bankr. E.D. Mich. 1985))). Taking into account the interests of such diverse parties is bound to lead to conflicts in a number of cases.

Should a Trustee fail to inform the bankruptcy court of the exact nature and extent of a conflict and how that conflict would potentially prejudice creditors and other beneficiaries of the bankruptcy estate, that Trustee may be strictly liable for harm to the beneficiaries.

> As an officer of the court, the trustee is entitled to a form of derivative judicial immunity from liability for actions carried out within the scope of the trustee's official duties. . . . While a trustee is allowed to make reasonable mistakes where discretion is allowed, a

28

trustee may be sued for intentional or negligent actions which amount to violations of the duties imposed upon the trustee by law. The trustee has a duty to preserve assets of the estate while exercising the care and diligence of an ordinarily prudent person under similar circumstances.

*In re McKenzie*, 2013 WL 2274006, at *5.

Retaining counsel with obligations to the debtor would not be an exercise of the care and diligence of an ordinary prudent person under similar circumstances. This is especially true where that counsel is committed to only providing limited representation and is prohibited from sharing with the Trustee important information that may assist the prosecution of the bankruptcy case.

The Trustee also at the hearing explained that he owed a fiduciary duty to Ms. Auday to preserve any interest she might have in the litigation and not dissipate it. He observed this is common in bankruptcy. The Court agrees that in general while the Trustee has an obligation to seek the best outcome in terms of the valuation of an asset, the Court also recognizes, as it said earlier, that a lawsuit is quite different than a piece of real property or some other tangible or intangible asset. If a debtor owns land the Trustee could not reasonably sell that land at just what is owed the creditors when the value of the land is much higher. In such circumstances the Trustee's fiduciary duties are clear. The value of the land can be determined with reasonable preciseness by objective appraisers or other experts. If the Trustee sold the land at a price reasonably close to the appraised value, it is clear no violation of the Trustee's fiduciary duty occurred. The same is not true of lawsuits, however. There are no widely recognized objective valuators of lawsuits. And as stated earlier, the Trustee's assessment of the value of the lawsuit is informed by Counsel's opinion. Counsel's opinion may be influenced by its interest in the case. Counsel's opinion also would be influenced by confidential information it would have received from Ms. Auday. This information

29

may not be shared with the Trustee. Counsel and the Trustee intimated that they think this case will be settled and the Trustee will just report that he obtained the best outcome possible. With these great potentials for conflicts, that report would always be subject to question. That would subject the Trustee to claims of a violation of his fiduciary duty from creditors and perhaps even from Ms. Auday.

Finally, Counsel has provided the Court with illustrations that they argue demonstrate situations such as this are common. One of the examples involves a lawsuit arising from an automobile accident where the driver of the automobile and a passenger share the same attorney in a lawsuit against a third party (Court File No. 62 at 5 (citing Restatement (Third) of Law Governing Lawyers § 128 d(*i*) (2000))). A more apt comparison would be if the driver was under the influence of alcohol at the time of the accident and the attorney represented the impaired driver and also the passenger. The passenger may not have known the driver was impaired. The attorney is informed by the driver of his or her impairment. While both the driver and the passenger have a claim against the other driver, the passenger under these circumstances potentially may also have a claim against his or her own driver. Counsel contends that, under the Restatement (Third) of Law Governing Lawyers, conflicts of this nature are consentable (*id.*). However, most rational clients would not consent to such an obvious conflict assuming they have been fully informed of the nature of the conflict. Moreover, most rational attorneys would avoid putting themselves in the aforementioned situation, especially after being made aware of the conflict and to avoid even the appearance of impropriety.

Consequently, the Court concludes the potential or actual conflict that could arise from concurrent representation in this case is real, and Ms. Auday has not "waived" the conflict for

purposes of Rule 1.7(b). The Court understands that Burnette, Dobson & Pinchak has already been appointed by the bankruptcy court as special counsel for the Trustee in this action. However, in light of the concerns discussed above, the Court has decided it will not allow Counsel to proceed with the litigation in this court on behalf of the estate. The Court will grant the Trustee fourteen days from the entry of this order to provide notice to this Court as to how he intends to proceed and how much additional time, if any, he will need to obtain new counsel.

### III.     AMENDED COMPLAINT

In December 2012, Ms. Auday filed a motion to amend the complaint (Court File No. 53). In her motion, she moves to join the Trustee as a party and to add an Age Discrimination in Employment Act ("ADEA") claim. Because the motion to amend was filed by Ms. Auday and Ms. Auday is no longer a party in this case, the Court must deny Ms. Auday's motion subject to refiling by the Trustee. The Court grants the Trustee leave to file an amended complaint to the extent he also intends to assert the ADEA claim on behalf of the bankruptcy estate.

### IV.     CONCLUSION

For the foregoing reasons, the Court will **ORDER** that the Chapter 7 Trustee be substituted into this action as the real party in interest. The Court further will **ORDER** that the Trustee file within fourteen days of the entry of the accompanying order a notice indicating (1) the exact name that should be listed in the caption for the Plaintiff and (2) how the Trustee intends to proceed with respect to obtaining new counsel. Finally, because the previous motion to amend the complaint was filed by Ms. Auday, the Court must **DENY** the motion (Court File No. 53). However, the Court

31

grants the Trustee leave to refile the amended complaint and to assert an ADEA claim on behalf of

the bankruptcy estate, if he still desires to do so.

An Order shall enter.


/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**